2022-1077

IN THE
# United States Court of Appeals for the Federal Circuit

POKARNA ENGINEERED STONE LIMITED,

Plaintiff

M S INTERNATIONAL, INC.,

Plaintiff-Appellant

v.

UNITED STATES, CAMBRIA COMPANY LLC,

Defendants-Appellees.

Appeal from the United States Court of International Trade
Case No. 1:20-cv-00127, Judge Leo M. Gordon

**REPLY BRIEF FOR**
**M S INTERNATIONAL, INC.**

Jonathan T. Stoel
Craig A. Lewis
Michael G. Jacobson
Nicholas R. Sparks

HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
(202) 637-6634

May 11, 2022

*Counsel to M S International, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2022-1077

**Short Case Caption** Pokarna Engineered Stone Limited v. US

**Filing Party/Entity** M S International, Inc.

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/11/2022

Signature: /s/ Nicholas R. Sparks

Name: Nicholas R. Sparks

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| M S International, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Hogan Lovells US LLP | Jared Wessel | Nicholas Laneville |
| Cayla Ebert | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| M S International, Inc. v. United States (CIT Ct. No. 20-137) | M S International, Inc. v. United States (CIT Ct. No. 20-138) | M S International, Inc. v. United States (CIT Ct. No. 20-139) |
| M S International, Inc. v. United States (CIT Ct. No. 19-140) | M S International, Inc. v. United States (CIT Ct. No. 19-141) | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

ARGUMENT.....1

I. Commerce's Failure to Consider the Views of Fabricators in Determining Industry Support Is Not in Accordance with Law Because They Are Producers of the Domestic Like Product.....3

A. Defendant and Cambria Cannot Escape the Fact that Fabricators Are U.S. Producers of the Domestic Like Product.....5

B. *Eurodif* Does Not Stand for the Proposition that Commerce May Exclude the Views of Producers of the Domestic Like Product.....15

C. Commerce May Not Cure Defective Petitions through Self-Initiation.....19

II. Substantial Evidence Does Not Support Commerce's Exclusion of Fabricators from the Domestic Industry.....21

A. Cambria and Subsequently Defendant Bore the Burden of Showing Industry Support.....22

B. Commerce Failed to Assess Information Fairly Detracting From the Substantiality of the Record Evidence.....24

CONCLUSION.....26

# TABLE OF AUTHORITIES

## Cases

*Brother Indus. (USA), Inc. v. United States*, 801 F. Supp. 751 (CIT 1992)...........11

*Chevron U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837 (1984)...................... 7

*Citrosuco Paulista, S.A. v. United States*, 704 F. Supp. 1075 (CIT 1988) .............20

*Eurodif S.A. v. United States*, 411 F.3d 1355 (Fed. Cir. 2005) .......................passim

*Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356 (2019) .........................18

*Mitsubishi Heavy Indus., Ltd. v. United States*, 986 F. Supp. 1428 (CIT 1997)........ ..........................................................................................................11, 22

*Suramerica de Aleaciones Laminadas, C.A. v. United States*, 966 F.2d 660 (Fed. Cir. 1992), *aff'd*, 44 F.3d 978 (Fed. Cir. 1994) ........................................................20

*USEC Inc. v. United States*, 259 F. Supp. 2d 1310 (CIT 2003) ...................5, 10, 11

*USEC Inc. v. United States*, 281 F. Supp. 2d 1334 (CIT 2003), *aff'd in part, rev'd in part sub nom. Eurodif S.A. v. United States*, 411 F.3d 1355 (Fed. Cir. 2005)*, aff'd on reh'g*, 423 F.3d 1275 (Fed. Cir. 2005) .........................................................11

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370 (Fed. Cir. 2013) .........................................................................................................19

## Statutes

19 U.S.C. § 1671a...........................................................................................20

19 U.S.C. § 1673a........................................................................................passim

Uruguay Round Agreements Act of 1994, Pub. L. No. 103-465 ...............11, 18, 20

## Regulations

19 C.F.R. § 351.201........................................................................................21

## Commerce Determinations

*Certain Quartz Surface Products from India*, 85 Fed. Reg. 25,391 (Dep't of Commerce May 1, 2020)........................................................................... 2

**Legislative Materials**

S. Rep. No. 249, 96th Cong., 1st Sess. 47 (1979) ..................................................17

2022-1077

IN THE

**United States Court of Appeals for the Federal Circuit**

---

POKARNA ENGINEERED STONE LIMITED,

Plaintiff

M S INTERNATIONAL, INC.,

Plaintiff-Appellant

v.

UNITED STATES, CAMBRIA COMPANY LLC,

Defendants-Appellees.

---

Appeal from the United States Court of International Trade
Case No. 1:20-cv-00127, Judge Leo M. Gordon

---

**REPLY BRIEF FOR M S INTERNATIONAL, INC.**

---

## ARGUMENT

Plaintiff-Appellant M S International, Inc. ("MSI") respectfully submits this Reply to the April 6, 2022 Response of Defendant-Appellee, the United States ("Defendant"), CM/ECF 25-26, ("Def. Br.") and the April 6, 2022 Response of Defendant-Appellee, Cambria Company LLC ("Cambria" or "Petitioner"), CM/ECF 19, 20, 22, 23 ("Cambria Br."). Defendant and Cambria submitted these Responses in opposition to MSI's December 20, 2021 Opening Brief, CM/ECF 10, 12, 13 ("MSI Br."), which challenges the determinations of the U.S. Department of

Commerce ("Commerce") in its antidumping ("AD") duty investigation of *Certain Quartz Surface Products ("QSPs") from India*, Inv. No. A-533-889 (the "Investigation").[1]

This appeal pertains to Defendant's refusal to consider the views of hundreds of American companies and thousands of American workers in Defendant's unnecessary and unlawful rush to initiate the Investigation. Defendant's errors resulted in the agency pursuing a year-long investigation and, subsequently, the imposition of substantial duties for more than two years and counting without sufficient domestic support for these actions. MSI respectfully submits that both U.S. law and the substantial evidence compiled before Commerce require a remand with appropriate instructions from this Court. In particular, the Final Determination was issued contrary to law and without substantial evidence because:

1) Commerce failed to consider the views of fabricators, producers of the domestic like product, in determining industry support, despite the

---

[1] The final determination was published as *Certain Quartz Surface Products from India*, 85 Fed. Reg. 25,391 (Dep't of Commerce May 1, 2020) ("Final Determination"), Appx1899-1902. This appeal also contests certain aspects of Commerce's accompanying *Issues and Decision Memorandum for the Final Determination in the Antidumping Duty Investigation of Certain Quartz Surface Products from India*, (Dep't of Commerce Apr. 27, 2020) ("Decision Memorandum"), Appx1861-1898, and *Certain Quartz Surface Products from India and the Republic of Turkey: Initiation of Less-Than-Fair-Value Investigations*, 84 Fed. Reg. 25,529 (Dep't of Commerce Jun. 3, 2019), Appx1048-1053, and *Antidumping Dry Investigation Initiation Checklist* (Dep't of Commerce May 28, 2019), Appx1002-1042.

inclusion of fabricated material in the domestic like product and scope definitions; and

2) Alternatively, the agency failed to support with substantial evidence its decision to exclude the views of fabricators from its determination of industry support—indeed, Commerce employed a test borrowed from the U.S. International Trade Commission ("USITC"), which found that the views of fabricators should have been considered.

As explained below, Defendant and Cambria have not demonstrated that Commerce acted lawfully, within its discretion, or with the support of substantial evidence in their Response Briefs. As the trial court conceded, Commerce's industry support determination presented a "close question," and Defendant and Cambria have not shown that Commerce's failure to account for the views of the fabricators was lawful. Appx0031. The judgment below of the U.S. Court of International Trade ("CIT") and Final Determination should be reversed and remanded.

## I. COMMERCE'S FAILURE TO CONSIDER THE VIEWS OF FABRICATORS IN DETERMINING INDUSTRY SUPPORT IS NOT IN ACCORDANCE WITH LAW BECAUSE THEY ARE PRODUCERS OF THE DOMESTIC LIKE PRODUCT

The governing statute, the Tariff Act of 1930, 19 U.S.C. § 1673a(c)(4), directs Commerce to consider the views of U.S. producers or workers accounting for the production of the domestic like product. MSI has demonstrated that the agency violated the plain text of the statute by (1) recognizing fabricators to account for

production of the domestic like product,[2] but then (2) failing to include fabricators in the domestic industry in making its industry support determination. In response, Defendant and Cambria (as they must in the face of plain text that does not support their argument) contend that the definition in the text is somehow special. That is, they claim that fabricators should be excluded because they are not "producers ***for industry support purposes***." Def. Br. at 33 (emphasis added). These arguments fail for the following reasons: (1) Commerce has acknowledged fabricators' production operations, which by themselves make the views of fabricators statutorily relevant; (2) Defendant's employ of the "sufficient production-related activities" test does not justify its unlawful dismissal of the views of producers who produce the domestic like product; and (3) the statute's text and structure – including the "positions disregarded" provision – make clear that Congress did not grant Commerce the discretion to disregard the views of like-product producers outside of codified reasons.

Moreover, Defendant's contention that *Eurodif S.A. v. United States*, 411 F.3d 1355 (Fed. Cir. 2005) ("*Eurodif I*") and *USEC Inc. v. United States*, 259 F. Supp. 2d

---

2 *See, e.g., QSPs from China Initiation Checklist* at Att. II, 14 ("Furthermore, we note that the petitioner's industry support calculation properly accounts for all production of quartz surface products in the United States; therefore, it necessarily accounts for the ***production of fabricators who fabricate U.S.-produced quartz surface products***.") (emphasis added) Appx0930; *QSPs from India Initiation Checklist* at Att. II, 15 (discussing the fabricator "***production process***") (emphasis added), Appx1031.

1310 (CIT 2003) are somehow dispositive is misplaced. Def. Br. at 28-30. Those decisions do not authorize Commerce to disregard the views of producers of the domestic like product. Rather, consistent with MSI's analysis of the governing statute, those decisions upheld Commerce's denial of an industry support challenge by customers with ***no manufacturing operations***. That is hardly the situation at hand, where fabricators told Commerce that they employ thousands of American workers and account for hundreds of millions of dollars in investment in U.S. manufacturing operations. Likewise, Defendant's references to legislative history are unpersuasive given the clarity of the pertinent statutory text, the imprecise language of the identified congressional reports, and the subsequent and substantial amendments to the law after the issuance of those reports.

### A. Defendant and Cambria Cannot Escape the Fact that Fabricators Are U.S. Producers of the Domestic Like Product

This appeal asks this Court to require that Commerce adhere to its statutory requirement to evaluate – prior to the initiation of an AD investigation – whether there is sufficient "domestic industry" support for initiation by examining the views of all producers. In determining whether to initiate an AD (or countervailing duty ("CVD")) investigation via a petition, Commerce must consider the views of domestic producers or workers who account for production of the "domestic like product" described in that petition prior to initiation. 19 U.S.C. § 1673a(c)(4)(A).

If the level of industry support for an AD petition is inadequate, then Commerce must render a negative determination and "shall dismiss the petition . . . ." *Id.* at § 1673a(c)(3).

Petitioner Cambria requested that Commerce include fabricated QSPs in ***both*** the scope ***and*** the domestic like product definition of the Investigation. Petitions for the Imposition of Antidumping and Countervailing Duties (May 8, 2019) ("Petitions"), at 6, 9. Appx0064, Appx0067. Furthermore, Cambria conceded that the fabrication of QSPs is an important and distinct process from slab manufacturing, and that fabricated material is used differently than slabs to make QSPs. Petitioner's Response to MSI's Comments on Standing (May 28, 2019) at 6-13. Appx0884-0891. These descriptions underscore the importance of the separate production process undertaken by fabricators. Notwithstanding its own admissions to Commerce, Cambria – primarily a QSP slab maker – then asked Commerce to disregard the views of fabricators in determining whether its Petition demonstrated sufficient industry support to initiate the Investigation. Petitions at 17 (contending, "{i}n this case, the relevant domestic industry consists of U.S. producers of the {QSPs} covered by these investigations," excepting fabricators). Appx0075. Commerce's initiation of these Investigations without considering the views of U.S. fabricators – producers of the domestic like product – thus was contradictory to the

requirements of the statute and unlawful under the first step of the analysis set forth in *Chevron U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 842-45 (1984).

In their Response Briefs, Defendant and Cambria contend that Commerce could lawfully ignore the views of fabricators because they should not be considered producers of the domestic like product. Def. Br. at 11, 25 (asserting that MSI "skips over the key question of whether fabricators should be considered 'producers' in the first place"). But, this argument mischaracterizes the proceedings before the agency – the question was never if fabricators were not producers – but whether they were "producers enough" to be included in the domestic industry support calculation. *See Initiation Checklist* at Appx. II, 14-15 (acknowledging the "***production process***" of fabricators but nonetheless finding that "fabricators do not perform sufficient production-related activities to be included in the domestic industry ***for industry support purposes***.") (emphases added), Appx1030-1031; Def. Br. at 8 (discussing the "manufacturing equipment and processes" of the fabricators). We respectfully submit that Commerce's addition of a "production enough" standard was a fatal error inconsistent with the governing statute.

In their briefs, Defendant and Cambria attempt to confront, unsuccessfully, the awkward inconsistencies that arise when arguing that certain U.S. (fabricator) producers should not be considered U.S. "producers." The Response Briefs are not able to rebut that fabricators employ a "production process," as acknowledged in the

Initiation Checklist, that results in merchandise covered by the domestic like product definition. Appx1031. Defendant, for instance, dismisses Commerce's reference to "***the production of fabricators***" as a "passing use of terminology in another proceeding" that should not be considered relevant to the agency's decision here to ignore the views of hundreds of American companies. Def. Br. at 24 (referencing MSI Br. at 27-28). But, Commerce's choice of words matters, and the agency must be consistent in its reasoning.

Moreover, Commerce's recognition of fabricator production is much more than a forgivable lapse of linguistic precision. Commerce's acknowledgment of the "***production of fabricators***" in the *QSPs from China* proceedings was directly relevant at the initiation of the *QSPs from India* proceedings. Appx0930. Contrary to Defendant's arguments, Commerce's findings in *QSPs from China* were expressly before Commerce in its consideration of the *QSPs from India* Petitions. This is because the Petitions ***expressly*** termed the domestic like product the same, Appx0068-0069, and Cambria placed Commerce's *QSPs from China* findings on the record to support its industry support arguments in the *QSPs from India* proceeding. Appx0906, Appx0930. Commerce itself then ***expressly*** linked the proceedings in its decision-making process ("Commerce did not include fabricators as part of the domestic industry for industry support purposes in the *{QSPs} from China* Initiations, despite MSI's arguments in that proceeding."). Appx1030-1031.

As such, Defendant may not simply dismiss Commerce's acknowledgment of the "production of fabricators {in the United States}" by contending that this description was set forth in a different investigation.

Next, Defendant contends that MSI simply wishes to engage in a class of "line-drawing" that Congress delegated to Commerce. Def. Br. at 17. This is wrong. Defendant seeks to enable Commerce to avoid the clear line drawn by Congress—if you are a producer, you should be included in the agency's industry support analysis. Defendant's argument also ignores the record of this proceeding, which demonstrates that Commerce drew one line recognizing fabricators to be producers, and then determined them not to be "producers enough." That is, Commerce accepted Cambria's view that fabricators account for the production of the domestic like product, and yet the agency subsequently excluded the fabricators' views from its industry support determination. In considering whether an industry supports a petition, Commerce must ascertain the contours of that industry—but, it is not statutorily authorized to draw lines to exclude producers of the domestic like product.

In short, MSI has not "skipped over" a fundamental question because the Defendant itself is unable to avoid the fact that fabricators are responsible for the production of QSPs and thus are producers. The statute does not allow Commerce to recognize a group of U.S. manufacturers as producers of the domestic like product

in fact but not "producers" for Commerce's statutorily required inquiry around industry support.

Defendant also claims that Commerce has the power to strip fabricators of their producer status in light of what Defendant asserts is statutory ambiguity around the term "producer." Def. Br. at 19-22. Defendant reasons that this purported ambiguity gives Commerce broad discretion to employ the "sufficient production-related activities" test to exclude the views of certain producers of the domestic like product. *Id.* at 22. This claim is not credible because the statute is not ambiguous—if you are a producer of the domestic like product, you are part of the domestic industry calculation absent the specific disqualifying factors enumerated by the statute.[3]

The precedent cited by Defendant – in which an end-user attempted to claim producer status – in support of broad interpretive discretion for Commerce is unavailing. Indeed, it is ironic that Defendant relies on *USEC Inc. v. United States*, 259 F. Supp. 2d 1310 (CIT 2003) to assert judicially recognized ambiguity. *Id.* In the passage referenced by Defendant, the CIT observed: "{I}t is unclear from

---

[3] Defendant's inclusion of initiation checklists from *Calcium Hypochlorite from the People's Republic of China* and *Chlorinated Isocyanurates from the People's Republic of China* does not demonstrate that U.S. producer of the domestic like product is an ambiguous term that may be interpreted narrowly as Commerce sees fit. Notably, these were not investigations where industry support was challenged on initiation or on appeal. Def. Br. at 30-31.

Commerce's explanation why the definition of 'producer,' a term that is not statutorily defined, should differ between one subsection of the statute and another." *USEC*, 259 F. Supp. 2d at 1328. In other words, the lack of a definition heightened the need for consistent application of the term by the agency, absent a clear need for divergent applications.[4] In *Brother Indus. (USA), Inc. v. United States*, 801 F. Supp. 751, 757 (CIT 1992), the CIT likewise noted with concern "a certain schizophrenia at the administrative level" with respect to treatment of the term "producer" in related proceedings.[5] Here, Commerce's own initiation checklists highlight the lack of consistency regarding the term "producer," insisting that fabricators are producers in fact, on the one hand, but not "***producers***" for Commerce's purposes of evaluating statutory standing, on the other. These inapposite cases do not grant Commerce wide flexibility to craft the meaning of a U.S. "producer"; rather, they instruct the agency

---

[4] Following a remand, the CIT and Federal Circuit upheld Commerce's explanation for why an entity that could qualify as a producer under the tolling regulations might not be a producer under for industry support purposes. The CIT observed: "In its Remand Determination, Commerce concludes that in order to qualify as the producer of a good for the purposes of industry support, a company must have a 'stake' in the domestic industry, which the agency interpreted to mean that a company must be engaged in the 'actual production of the domestic like product' in the United States." *USEC Inc. v. United States*, 281 F. Supp. 2d 1334, 1345 (CIT 2003), *aff'd in part, rev'd in part sub nom. Eurodif S.A. v. United States,* 411 F.3d 1355 (Fed. Cir. 2005), *aff'd on reh'g,* 423 F.3d 1275 (Fed. Cir. 2005).

[5] *Brother Indus.*, 801 F. Supp. 751 was also decided before the Uruguay Round Agreements Act of 1994 ("URAA"), Pub. L. No. 103-465 § 212, disallowed any presumption of industry support for a petition. *See Mitsubishi Heavy Indus., Ltd. v. United States*, 986 F. Supp. 1428, 1431 (CIT 1997).

to use the term consistently and in accordance with its ordinary meaning and the statutory structure.

Defendant and Cambria also maintain that all fabricators may be disqualified as U.S. producers for industry support purposes if certain individual fabricators have import operations. *See* Def. Br. at 23, Cambria Br. at 43 ("Commerce may examine the extent of a company's imports of the domestic like product to determine if it is a 'producer' in the first place."). Defendant and Cambria appear to contend that this purported agency practice is separate from the "positions disregarded" provision of the industry support statute, which provides: "{t}he administering authority may disregard the position of domestic producers of a domestic like product who are importers of the subject merchandise." 19 U.S.C. § 1673a(c)(4)(B)(ii); Def. Br. at 25, 31-32. That is, Defendant appears to propose inserting into the statute a double filter of exclusion based on import operations – (1) whole classes of U.S. producers are not to be considered "producers" if there are allegations that some undefined share of these producers import, and (2) an individual "producer" with import operations may then separately be excluded under the more demanding, producer-specific inquiry provided in the statute. This is a clear overreach of administrative authority and a violation of the statutory text.

Congress's inclusion of a specific "positions disregarded" provision for producers of the domestic like product demonstrates that Congress did not intend

"producer" to be a flexible term whose meaning could be crafted by petitioners and Commerce. Congress clearly defined the limited occasions in which a domestic producer of the domestic like product may be excluded from the domestic industry and Commerce's industry support calculation. As such, Commerce is precluded by the text and structure of the governing statute, and by the statutory canon *expressio unius est exclusion alterius*, from invoking additional, unidentified criteria to exclude domestic producers from the domestic industry.

Moreover, Defendant's proposal for double filtering based on importing operations makes little sense under the statutory scheme. The clear text of the statute, 19 U.S.C. § 1673a(c)(4)(B)(ii), establishes that there can be "domestic producers of a domestic like product who are importers of the subject merchandise" – in other words, import operations alone do not diminish their status as "producers." It is also nonsensical that Commerce would have an unspecified authority to exclude entire classes of producers by deeming them not-producers by virtue of *alleged* imports when Congress granted limited authority to the agency to exclude importing producers solely on a producer-specific basis.

Finally, Defendant's and Cambria's arguments regarding potential double counting attempt to distract from the text of the statute and the domestic like product definition. Def. Br. at 23, Cambria Br. at 51. Defendant, for instance, contends that exclusion of fabricators' views is appropriate because "any fabricated product that

fabricators make from a quartz slab previously produced in the United States would already be included in the domestic industry because it would have been produced by Cambria or another domestic QSP producer. . . ." Def. Br. at 23. As detailed above, the statute directs Commerce to accept the views of U.S. manufacturers who produce the domestic like product. Concerns regarding double counting are no excuse for Commerce to ignore the views of an entire class of producers of the domestic like product. For example, Petitioner Cambria itself is both a slab producer and fabricator—there is no insinuation from either Commerce or Petitioner that Cambria was unable to segment the data to avoid double counting. As such, Defendant's and Cambria's double-counting arguments are neither grounded in the statute nor do they provide a legal basis for Cambria to gerrymander industry support.

In sum, Defendant and Cambria have failed to dislodge MSI's demonstration that fabricators, manufacturers of the domestic like product constructed by both Commerce and Cambria in the Investigation, are "producers" for purposes of Commerce's assessment of the domestic industry in the Investigation. Put simply, where a producer manufactures the domestic like product and statutorily provided bases for exclusion are not applicable to that producer, the producer must be considered by Commerce to be part of the domestic industry. The statute does not (1) enable Commerce to qualify manufacturers as responsible for "production

processes" that create merchandise covered by the domestic like product, and then (2) permit Commerce to exclude these producers' views through the filter of a "production-related activities" test.

### B. *Eurodif* Does Not Stand for the Proposition that Commerce May Exclude the Views of Producers of the Domestic Like Product

The Response Briefs reference heavily the *USEC/Eurodif* litigation, with Defendant and Cambria characterizing MSI's Opening Brief as a request that the Court depart from its previous holding. Def. Br. at 28-31; Cambria Br. at 24-28. The reliance of Defendant and Cambria on *Eurodif I* in support of their positions is misplaced.

As MSI explained in its Opening Brief, the Federal Circuit's *Eurodif I* decision stands for the proposition that Commerce must consider the views of U.S. producers of the domestic like product in determining whether AD/CVD petitions have adequate industry support and, correspondingly, that Commerce should not include the views of non-producers in its industry support determination. In assessing industry support in the underlying agency proceeding at issue in *Eurodif I*, Commerce declined to consider the views of utilities (i.e., end-users of enriched uranium) who never claimed to engage in the production of the domestic like product. This proposition is consistent with the correct statutory construction of the term "producer" discussed in MSI's Opening Brief and again above. There is no need for MSI to request that this Court disregard the holding of *Eurodif I*, as the

Government erroneously asserts. Consistent with the ordinary or natural meaning of the term "producer" set forth in the governing statute, 19 U.S.C. § 1673a(c)(4), a U.S. producer undertakes actual production of the domestic like product in the United States. The scope of this Investigation included QSPs "whether . . . *fabricated or not fabricated*," and Commerce found the QSPs defined in the scope to "constitute a single like product." *Initiation Checklist* at Att. 1, Att. 2, 4-5, Appx1015, Appx1020-1021 (emphasis added). Accordingly, it was impermissible for Commerce to endorse efforts by Cambria to (re)craft the meaning of "producer" so as to exclude members of the U.S. industry that are responsible for manufacturing merchandise described by the domestic like product.

Consistent with the analysis described in *Eurodif I*, fabricators constitute producers of the domestic like product with far more than "no stake in the result of the investigation." *Eurodif I* at 1360. As such, unlike the utility companies that admitted in *Eurodif I* to not producing the domestic like product as they were solely end-users of enriched uranium, the views of fabricators are statutorily relevant for industry support purposes.[6]

---

[6] Defendant also contends that "MSI skips to the evidence and result of Commerce's analysis in *Eurodif*, rather than acknowledging that Commerce's method of analyzing the evidence based upon its statutory interpretation is the same in both cases." Def. Br. at 29. This further attempt to dismiss MSI's observance of factual distinctions between this case and *Eurodif I* are misplaced because the Court emphasized in that decision the specific facts underlying its analysis. *Eurodif I* at 1361 ("There is no basis to conclude that Commerce's interpretation *in this context*

Defendant also erroneously claims that the legislative history referenced in *Eurodif I* shows that fabricators were properly excluded from Commerce's consideration of industry support. Def. Br. at 28. This legislative history reports: "The Committee intends that {the standing requirements for filing a petition} be administered . . . to prohibit petitions filed by persons with no stake in the result of the investigation." S. Rep. No. 249, 96th Cong., 1st Sess. 47 (1979). On the contrary, as MSI explained in its Opening Brief, this same legislative history actually supports including QSP fabricators – plainly "producers" of the domestic like product with a "stake in the result of the investigation" – in the tallying of the domestic industry. Prior to initiation, 270 fabricators employing more than 5,800 American manufacturing workers submitted declarations to Commerce expressing their views on Cambria's petition. MSI Standing Challenge at 6, Exhibit 6,

---

is unreasonable or not in accordance with law.") (emphasis added). Indeed, the utilities' complete lack of any production process was a key factor in the *Eurodif I* Court's analysis. *Eurodif I* at 1360 ("Commerce's determination that domestic utilities were not 'producers' of LEU is consistent with the purpose of § 1673a(c)(4)(A). Section 1673a(c)(4) speaks of 'industry support' and, as expressed in legislative history, Congress intended the industry support statute 'to provide an opportunity for relief for an adversely affected industry and to prohibit petitions filed by persons with no stake in the result of the investigation.'") (citing S. Rep. No. 249, 96th Cong., 1st Sess. 47 (1979)). Defendant's request that this Court reach the same outcome as the *Eurodif I* Court (i.e., accepting Commerce's industry support determination) is in error because here manufacturers responsible for production of the domestic like product challenged the initiation of the Investigation.

Appx0396, Appx0545-0826. The legislative history cited by the Government – substantiating Commerce's exclusion of entities not engaged in domestic production – thus does not justify the exclusion of fabricators from Commerce's industry support determination.

Not only does the legislative history cited by Defendant support MSI's position, but resort to legislative history is unnecessary here, as a consequence of the clarity of the statute's direction.[7] *See Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) ("Even those of us who sometimes consult legislative history will never allow it to be used to 'muddy' the meaning of 'clear statutory language.' ") (internal citation omitted). That is, the ordinary meaning of a

---

[7] Furthermore, Defendant's claim that this legislative history is definitive or dispositive is weak. The legislative history cited in *Eurodif I* predated the substantial revisions to the U.S. trade laws made through the URAA. It was only as part of the URAA's enactment that the United States even adopted a defined "industry support" test in the AD/CVD statute. Previously, Commerce was simply directed to commence an AD investigation when an interested party filed a petition "on behalf of an industry." 19 U.S.C. § 1673a(b)(1). In other words, the legislative history relied upon by Defendant has arguably been overridden by the Congress's prescription to Commerce in the URAA not to presume industry support and requiring the agency to assess whether AD/CVD petitions have met the percentage thresholds of support from U.S. producers set forth in the statute. *Id.* § 1673a(c)(4)(A). The URAA further established the requirement that if the requisite showing of domestic support has not been met, Commerce must poll or sample U.S. producers accounting for the "total production of the domestic like product". *Id.* § 1673a(c)(4)(D). As such, the URAA and its substantial amendments to the requirements for commencing an AD or CVD investigation thus narrowed Commerce's discretion and limits the relevance of the 1979 legislative history.

"producer" – the term employed in the governing statute – is clear, and legislative history cannot be used to reshape that meaning.[8]

For all of these reasons, neither *Eurodif I* nor the legislative history cited by Defendant grants Commerce broad discretion to exclude U.S. producers of the domestic like product from the industry support determination. Congress has identified specific situations in which U.S. producers of the domestic like product may be excluded from the domestic industry, and those conditions were not met in the Investigation.

### C. Commerce May Not Cure Defective Petitions through Self-Initiation

Cambria (but not Defendant) contends that even if its Petition was deficient and the views of fabricators should have been included in the industry support analysis, no remedy is warranted because Commerce can initiate investigations *sua sponte*. Cambria Br. at 57-60. MSI concurs with Cambria's acknowledgment (in the alternative) that its Petition was deficient but demurs as to Cambria's novel position that Commerce has an inherent ability – not provided for in the text of the

---

[8] This legislative history must also be read in context of the compelling and consistent precedent that the trade laws must be administered accurately and fairly. *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1379 (Fed. Cir. 2013) ("An overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins as accurately as possible."). Crafting a definition of the domestic industry that excludes a subset of U.S. producers of the domestic like product does not support fair or accurate investigations.

governing statute – to cure its fundamental error in excluding fabricators form the domestic industry.

Moreover, MSI calls to this Court's attention that the legal support proffered by Cambria is inapposite and anachronistic. Specifically, Cambria cites to a 1988 CIT and a 1992 Federal Circuit case – both predating the URAA and statutory industry support thresholds – to support its claim. For example, *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 966 F.2d 660, 666 (Fed. Cir. 1992), *aff'd*, 44 F.3d 978 (Fed. Cir. 1994), characterizes its inquiry as follows:

> The present appeal asks us . . . : ***what is the degree of industry support which must be shown before Commerce may act in response to a petition for initiation of an investigation pursuant to 19 U.S.C. § 1671a(b) or 1673a(b)***. There is nothing in sections 1671a(b) or 1673a(b) that answers the question. The statute cannot be said to give a clear answer, since it gives no answer. (emphasis added)

This question was subsequently and definitively answered by the URAA: at least 25 percent of the total production of the domestic like product and more than 50 percent of the production of the domestic like product produced by that portion of the industry expressing support for or opposition to the petition. 19 U.S.C. § 1673a(c)(4)(A).[9]

---

[9] Cambria's discussion of Commerce's refusal to "elevate{} form over substance" is inapplicable here. Cambria Br. at 57-58 (citing *Citrosuco Paulista, S.A. v. United States*, 704 F. Supp. 1075, 1083 (CIT 1988)). In *Citrosuco*, Commerce added co-petitioners who supported the petition after initiating the investigation.

Cambria's contention thus relies entirely on precedents predating governing law and suggests that this Court should nullify Congress's industry support threshold requirements. If Congress had intended for Commerce to be able to cure flawed petitions *sua sponte*, then it would have been entirely unnecessary and, indeed, pointless for the Congress to have included its carefully prescribed requirements around when the agency may initiate an AD or CVD investigation (and particularly where a petitioner's standing has been contested as is the case here). Finally, if this Court decides to cure Cambria's defective Petition by deeming the Investigation "self-initiated," as Cambria self-servingly suggests would be lawful, then this Court will have initiated the investigations unlawfully by overriding Commerce's governing regulations for self-initiation. 19 C.F.R. § 351.201.

## II. SUBSTANTIAL EVIDENCE DOES NOT SUPPORT COMMERCE'S EXCLUSION OF FABRICATORS FROM THE DOMESTIC INDUSTRY

For the reasons outlined above in Section I, Commerce's use of the "production-related activities" test in this instance was an unlawful means of eliminating producers from the domestic industry because Commerce acknowledged U.S. fabricators to engage in production processes to create the domestic like

---

Here, in contrast, Commerce disregarded the views of petitioners who opposed the Petition at their outset. Commerce's omission of the fabricators' views was contrary to statute could not reasonably be contended to be more "form" than "substance."

product. Even if Commerce were permitted to employ such a test, however, its application in this instance is not supported by substantial evidence on the record and should thus be remanded on this alternative ground.

### A. Cambria and Subsequently Defendant Bore the Burden of Showing Industry Support

Defendant's and Cambria's Responses incorrectly assert that MSI bore a burden of disproving industry support. *See* Def. Br. at 9, 38-41; Cambria Br. at 56 ("MSI failed to provide any evidence regarding the volume of additional QSP fabrication performed by the fabricators that were not part of MSI's standing challenge.")[10] This is wrong. "Commerce may not operate on the basis of the presumption {of industry support}." *Mitsubishi Heavy Indus.*, 986 F. Supp. at 1431. The burden was thus on Cambria in the first instance, and subsequently on Commerce, to demonstrate that there was sufficient industry support for the agency to initiate investigations on the basis of the Petition.

MSI supplied Commerce with record evidence demonstrating that Cambria's Petition was not supported by the domestic industry as required by the governing

---

[10] Cambria's assertion that MSI "waived" its claims regarding the number of fabricators is incorrect because Cambria and then Commerce, not MSI, bore the burden of accounting for the size of the domestic industry. Cambria Br. at 55. MSI collected the views of hundreds of fabricators, and these views demonstrated that further information was required for Cambria to demonstrate industry support for the Petitions. Appx0545-0826.

statute. In its May 24, 2019 standing challenge, MSI provided declarations from 270 companies fabricating QSP and opposing Cambria's Petition. In 2018, these fabricators employed more than 5,800 U.S. workers and produced more than 11.9 million square feet of QSPs. MSI Standing Challenge at 6, Exhibit 6, Appx0396, Appx0545-0826. Commerce failed to address that substantial evidence and its significance until MSI's appeal to the CIT. This was unlawful as Commerce had a tool readily available to it to assess industry support – that is, the agency should have polled the industry or collected other information in accordance with 19 U.S.C. § 1673a(c)(4)(D) – yet Commerce failed to undertake this option. *Initiation Checklist* at Att. II, 8, Appx1024 (noting that Commerce did not "poll the industry or rely on other information to determine industry support for the India Petitions.").

The remainder of Defendant and Cambria's arguments in this regard are a red herring. That is, they contend that the record evidence shows that even if fabricators' views had been taken into account, the Petition still had the requisite level of industry support under the statute. Def. Br. at 9; Cambria Br. at 54. But, these contentions assume the very question Commerce was instructed to answer by the governing statute. Since Commerce failed to poll the industry (including fabricators) or to otherwise collect additional evidence regarding domestic industry support, the agency unlawfully presumed precisely what the statute required it to ascertain, i.e., whether there was industry support. This Court thus should remand so that

Commerce can poll the industry or collect additional information establishing whether there was industry support for Cambria's Petition and, in so doing, take into account the view of fabricators.

### B. Commerce Failed to Assess Information Fairly Detracting From the Substantiality of the Record Evidence

Commerce also failed to support its initiation determination with substantial evidence because the agency did not engage with MSI's information casting serious doubt on Cambria's claims of industry support. This Court should assess Commerce's factual findings closely because the USITC, when examining the same industry producing QSP, reached the exact opposite conclusion espoused by Commerce.[11] Commerce's Initiation Determination shows that the agency did not assess the evidence provided by MSI prior to initiation, instead relying solely on Cambria's self-interested assertions. In fact, Commerce admits as follows: "{W}e have analyzed the information ***provided by the petitioner*** and find that there is reason to again conclude that fabricators do not perform sufficient production-related activities to be included in the domestic industry for industry support purposes."

---

[11] The USITC's opposite conclusions underscore that Commerce (1) did not properly asses information detracting from the substantiality of Cambria's evidence, and (2) that Commerce should be afforded less deference. Commerce's rushed and one-sided conclusion lacked substantial evidence, and the Court should be particularly skeptical of the Defendant's misleading claim of a "chronological fallacy". Def. Br. at 45-46. MSI's argument is not that Commerce was bound to follow a yet unmade finding of its sister agency.

*Initiation Checklist*, at Att. II, 14, Appx1030 (emphasis added). This unqualified admission demonstrates that Commerce failed to meet its burden of engaging with evidence detracting from the agency's decision. Indeed, Defendant's assertion that Commerce duly considered MSI's pre-initiation arguments is not grounded in the record and can be disproved by a simple review of the footnotes in the Initiation Checklist, which treat the Petition as the primary source consulted. *See, e.g.*, Commerce's introduction to its position on "Whether Fabricators Should Be Part of the Domestic Industry for Industry Support Purposes" (Appx1030):

> [108] *See* Petitioner's Letter, at 4-18 and Exhibits 2-8.
> [109] *Id.* at 6-12 and Exhibits 2-8.
> [110] *Id.*
> [111] *Id.* at 6 and Exhibit 2.
> [112] *Id.* at 13, 20, and Exhibit 7.
> [113] *See* Volume I of the Petitions, at Exhibit I-6; *see also China Quartz Surface Products Prelim*, at 15.
> [114] *See* Volume I of the Petitions, at Exhibit I-6; *see also China Quartz Surface Products Prelim*, at 15.
> [115] *See* Volume I of the Petitions, at Exhibit I-6; *see also China Quartz Surface Products Prelim*, at 15.
> [116] *See* Volume I of the Petitions, at Exhibit I-6; *see also China Quartz Surface Products Prelim*, at 15.
> [117] *See* Volume I of the Petitions, at Exhibit I-6; *see also China Quartz Surface Products Prelim*, at 15.
>
> 14

Moreover, Cambria's complaints about MSI's fabricator-standing evidence confirm (again) the significance of the fabricators' production operations. For example, Cambria acknowledges that a "fab shop can be established for as little as $50,000 to $100,000," Cambria Br. at 8, and its Petitions suggest that there could be 10,000 or more fabricators in the United States. Appx0168. Assuming *arguendo* that Cambria's investment figures are accurate, U.S. fabricators accounted for at

least ***$500 million in investment*** in U.S. production of the domestic like product ($50,000 x 10,000 fabricators). Moreover, Cambria acknowledges that a U.S. QSP slab production plant can be established for as little as $40 million. *See* Cambria Br. at 7. As such, U.S. fabricator investments are sufficient to build at least 12.5 QSP slab producers. Cambria's admissions thus further undermine Commerce's conclusion to ignore fabricators in its standing analysis.

## CONCLUSION

For the foregoing reasons and those presented in its Opening Brief, MSI respectfully requests that this Court reverse the judgment of the CIT and remand this case with instructions consistent with the points set forth in its Opening Brief and in this Brief.

Respectfully submitted,

/s/ Jonathan T. Stoel
Jonathan T. Stoel
Craig A. Lewis
Michael G. Jacobson
Nicholas R. Sparks

HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
(202) 637-6634

*Counsel to M S International, Inc.*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains less than 7,000 words. This brief contains 6,065 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman 14-point font.

Dated: May 11, 2022 /s/ Jonathan T. Stoel